IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


LATEEF FISHER, #329648                      :
          Plaintiff,                        :
     v.                                     :   CIVIL ACTION NO. L-05-2754
                                            :
OFC. DOUGLAS L. GARNER                      :
          Defendant.                        :


**MEMORANDUM**

     Plaintiff Lateef Fisher was charged in state court with possession with intent to distribute drugs

and drug paraphernalia.  At trial, the jury found him not guilty.  Following his acquittal, Fisher brought

the instant suit against Douglas Garner, the police officer who filed the application for statement of

charges that resulted in Fisher's prosecution.  Garner also testified against Fisher at hearings and at trial.

     In the instant suit, which he brings under 42 U.S.C. §1983, Fisher claims false arrest, false

imprisonment, and malicious prosecution.   With respect to Defendant Garner, Fisher contends that

Garner "did not use proper police protocol in his investigation," that Garner's Application for Statement

of Charges was not supported by probable cause, and that Garner's trial testimony was inconsistent

with statements that Garner made in his Application and at other hearings.[1]

---

[1]    Approximately eight months after the filing of Garner's Motion for Summary Judgment, Fisher
filed a Motion to Amend his Complaint, which raised an eleventh-hour "equal protection" claim related to
Garner's alleged withholding of evidence (fingerprint analysis) from the prosecution until the date of trial.
(Docket No. 32).   Leave to amend shall be denied as to this claim.  This claim could have been advanced
in the original complaint and prior to the filing of Garner's responsive pleading.   Further, this late-hour
claim does not relate back to Fisher's original contentions and would, in effect, add a wholly new
allegation to his complaint, thus requiring additional briefing by the parties.

     Moreover, Fisher's claim with respect to the fingerprint evidence is not actionable.  He does not
contend that Garner withheld the evidence from the defense.  He does not apparently argue that the
evidence, if presented earlier, would have changed any of the pre-trial probable cause determinations of
the state district court or the state circuit court.  Nor would such an argument have met with success.
When presented with a belated motion to amend, a court should deny the motion if the new allegations are
futile or if litigating them would result in undue delay.  Forman v. Davis, 371 U.S. 178, 182 (1962).  Such

Now pending are the parties' cross motions for summary judgment.  The issues have been fully briefed and no hearing is necessary to resolve them.  See Local Rule 105.6 (D. Md. 2004).   As is discussed herein, the Court concludes that Garner is entitled to qualified immunity.  Accordingly, by separate order, the Court will GRANT Garner's Motion for Summary Judgment and DENY Fisher's Partial Motion for Summary Judgment.

## I.    STANDARD OF REVIEW

### A.    Summary Judgment

Fed. R. Civ. P. 56(c) provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

---

is the case here.

Fisher's Motion to Amend also seeks to: (i) raise civil rights violations under the Fourth, Fifth, Eighth, and Fourteenth Amendments; (ii) modify Fisher's allegations of false arrest and false imprisonment to include allegations that Garner omitted and falsified information in his affidavit; and (iii) increase the damage award from $500,000.00 to a cumulative $6,000,000.00. These untimely claims also derive from his assertion that Garner failed to follow police protocol and testified inconsistently. Accordingly, the claims are subject to Garner's qualified immunity defense.  The motion to amend is, therefore, denied with respect to them as well.

properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact.

 See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that

there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525

(4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e).  The court should "view the

evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without

weighing the evidence or assessing the witness' credibility."  Dennis v. Columbia Colleton Med. Ctr.,

Inc., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative

obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to

trial."  Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d

774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

## B.     Qualified Immunity

Garner claims that Fisher's suit is barred by qualified immunity.   The grant of qualified immunity

is provided so that government officials can perform their duties free from the specter of endless and

debilitating lawsuits.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Determining whether a

state officer is entitled to qualified immunity is a two-step inquiry.  First, a court must decide "whether a

constitutional right  would have been violated on the facts alleged."[2]  Saucier v. Katz, 533 U.S. 194,

200 (2001). "Next, assuming that the violation of the right is established, courts must consider whether

---

[2]     The Fourth Amendment right to be arrested only on probable cause is clearly established.  See
Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996); Brooks v. City of Winston-Salem, 85 F.3d 178, 182
(4th Cir. 1996).

the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002); see also Miller v. Prince George's County, Maryland, 475 F.3d 621, 626-27 (4th Cir. 2007).

The significance of these principles for this lawsuit is clear. In determining whether Garner is entitled to qualified immunity, the guiding principle is that "[o]nly where the warrant application is so lacking in indicia of probable cause[3] as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344-45 (1986).[4]   The evaluation of Garner's claim to qualified immunity involves two inquiries.  The Court must first address the significance to be accorded the District Court of Washington County's determination that Garner acted

---

[3]     In order to succeed on his Fourth Amendment claim, Fisher must demonstrate that his arrest was not supported by probable cause.  Probable cause requires facts and circumstances sufficient to warrant a prudent person to believe that the suspect has committed or is committing a crime.  See Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998).

[4]     A claimant's allegations that police seized him "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a ... claim alleging a seizure that was violative of the Fourth Amendment."  Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir. 1996).  Fisher seemingly alleges here that his seizure was unreasonable because it followed from a warrant affidavit that was later modified and altered by Garner during court testimony. To succeed on his claim, Fisher must prove that Garner deliberately or with a reckless disregard for the truth made material false statements in his affidavit, see Franks v. Delaware, 438 U.S. 154, 171 (1978).  Alternatively, Fisher could prove that Garner omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.  See United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks omitted).
        "Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."  Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks omitted); see also, Forest v. Pawtucket Police Dept., 377 F.3d 52, 58 (1st Cir. 2004); United States v. Clapp, 46 F.3d 795, 801 n. 6 (8th Cir.1995). With respect to omissions, "reckless disregard" can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir. 2003); see also Wilson, 212 F.3d at 788; United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir.1993). A plaintiff's "allegations of negligence or innocent mistake" by a police officer will not provide a basis for a constitutional violation. Franks, 438 U.S. at 171.

with probable cause.  The Court must next examine whether a reasonable officer in Garner's position could have believed that probable cause existed.

## II.   <u>ANALYSIS</u>

To summarize the facts in this case, on July 14, 2004, a civilian confidential informant contacted the City of Hagerstown Police Department and complained of a suspicious person in a parked silver/gray vehicle on James Street in Hagerstown with plates that had been changed numerous times over the course of a few days.[5]  Shortly after the complaint was called in, at approximately 10:25 p.m., Garner was dispatched to the area in full uniform and driving his marked police vehicle.   Garner arrived at the scene and parked his vehicle three car lengths behind a silver Buick LaSabre, which was parked behind the informant's red truck.  After speaking to the confidential informant,  who was on site and personally known to Garner and other members of the City of Hagerstown Police Department, Garner walked towards the LaSabre.

The area was lit by a nearby street light extending from a utility pole.  Garner approached the vehicle and observed a black male sitting in the driver's seat.  The engine was not running, but the vehicle's headlights and taillights were on.  Garner saw Pennsylvania license plates with an upside down expiration paper hanging in the rear window.  Garner requested a vehicle check on the registration plate.

Garner turned on the spotlight of his vehicle and trained it on the LaSabre.   He spoke with the occupant through the open driver's side window.  He identified himself as a police officer, explained

---

[5]   According to Garner, James Street is a narrow one-way street known to police officers as a area of ongoing drug trafficking.

why he had approached, and asked the occupant for his identification.[6]  The man stated that he did not

have identification on him.  When asked for the vehicle's registration card, the man could not produce

it.  Questioned about vehicle ownership, the man claimed that his girlfriend "Shanetta" owned the car,

lived at a nearby address on Salem Avenue, and that he was waiting for her.  Garner asked if there was

any contraband in the car and the occupant said no.  According to Garner, the man consented to a

search of the vehicle, agreed to step out of the LeSabre, submitted to a pat-down search, and then

requested permission to sit down on the curb while the search of the vehicle took place.

As Garner reached the driver's door of the parked car, the man ran.  A chase ensued.  Garner

advised the dispatcher and identified the suspect as a black male wearing a white tee shirt, red shorts,

and a red and white hat.  Garner was subsequently advised that the temporary registration in the

LaSabre had been issued for a Mercury sedan and that the vehicle identity number ("VIN") of the

LeSabre belonged to an unregistered Buick owned by a white female Hagerstown, Maryland resident.

Garner, knowing that the vehicle was going to be impounded, conducted an inventory search,

during which he saw a clear plastic baggie protruding from an electrical control panel.  When he opened

it, Garner saw numerous individually-wrapped plastic baggies containing brownish-green plant material.

Garner also saw eight other individually-wrapped plastic baggies containing a white-beige crystalline

substance.  Given his training and experience, Garner suspected that the baggies contained marijuana

and cocaine.  From the packaging, he knew that the drugs were in intended for distribution.   Garner

---

[6]     Garner states that he recognized Fisher, also known as "Free," from an incident two to three
years earlier when Fisher had fled from local police.  Garner apprehended him after a high-speed chase
from Hagerstown into Washington County which ended when Fisher's vehicle crashed into an
embankment.  Marijuana and a handgun was recovered from Fisher's car.   Garner also stated he knew
Fisher from "numerous street level contacts" who had identified Fisher as a street level drug dealer.

states that he found a black gym bag on the back seat containing trash and numerous papers, including a notice from the District Court of Maryland for Washington County concerning Lateef Fisher.  The vehicle was then towed to an impound lot.

Garner and his supervisor subsequently proceeded to one of two possible addresses given by the black male suspect[7] and spoke to a woman who indicated that she lived at the address with her daughter "Shanetta" and her daughter's boyfriend.  The woman did not know the name of the boyfriend, but said that she had heard some people call him "Free."

Garner then went to the police department so that the Western Maryland Crime Lab could process the evidence he had seized.   The following day, on July 15, 2004, Garner inspected a photo array and positively identified Fisher as the person he had seen in the LaSabre on James Road.

On July 16, 2004, Garner presented an Application for Statement of Charges to the District Court of Maryland for Washington County.  As a result of the application, a District Court Commissioner issued a Statement of Charges charging Fisher with possessing or administering controlled dangerous substances, in violation of Md. Code Ann., Art. 27, § 5-601(c)(1) & (2), possessing or administering controlled dangerous substances with intent to distribute, in violation of §§ 5-602 and 5-602(2), and drug paraphernalia-use or possession with intent to use, in violation of § 5-619(c)(1).

On August 3, 2004, the crime lab tested the baggies seized from the LaSabre and found that they contained 15.95 grams of marijuana and 5.78 grams of cocaine.  The lab checked latent fingerprint that they had found on the baggies against Fisher's known fingerprints, but no identification could be

---

[7]      Garner admits some confusion as to whether the address given by the black male was 513 or 531 Salem Avenue.

made.  The lab also lifted a palm print but could not attempt a comparison because the police did not have a palm print from Fisher on file.

On October 7, 2004, Fisher, who was already in custody in Baltimore, Maryland on unrelated charges,[8] was arrested and transferred to the Hagerstown Police Department, where he was served with the arrest warrant.  On November 3, 2004. Garner testified at Fisher's preliminary hearing in the District Court for Washington County.  At the end of the hearing, District Court Judge M. Kenneth Long, Jr. determined that there was probable cause to believe that Fisher had committed the offenses with which he had been charged.

On November 24, 2004, the State's Attorney of Washington County charged Fisher with two counts of possession of a controlled dangerous substance with intent to distribute and two counts of possession of a controlled dangerous substance.  On March 1, 2005, Circuit Court Judge John H. McDowell denied Fisher's motion to suppress evidence seized from the vehicle .  Garner claims that at this hearing he testified only that he inspected the photo array.  On April 19, 2005, Fisher was tried by jury in the Circuit Court for Washington County.  Garner testified as a witness for the State.  At the conclusion of the State's case, Circuit Court Judge Donald E. Beachley denied Fisher's motion for judgment of acquittal.  According to Garner, Fisher presented no evidence, rested his case, and then renewed his acquittal motion, which Judge Beachley again denied.  The Court submitted the case to the jury, which found Fisher not guilty on all counts.

---

[8]     Fisher claims that in October of 2004, he was incarcerated at the Maryland Reception, Diagnostic, and Classification Center on a parole violation.  He states that on October 7, 2004, the Maryland Parole Commission reinstated his parole, and he would have been released on bail but for his arrest on the Washington County charges.   Fisher is now confined at the Roxbury Correctional Institution, where he is apparently serving a sentence for an unrelated 2005 drug conviction.  See State v. Fisher, Criminal No. 21K04034665 (Circuit Court for Washington County).

In his opposition, Fisher makes two broad claims. First, he alleges that Garner did not use proper police protocol. In effect, Fisher charges Garner with sloppy police work and with drawing an unreasonable conclusion that Fisher was the man in the car. Garner, Fisher claims, should have realized that he had a weak case because he knew of no witnesses who could place Fisher at the crime scene, and he had no other evidence linking Fisher to the impounded LeSabre. Had Garner conducted a proper investigation, he would have discovered that Fisher had four alibi witnesses prepared to testify that Fisher was not in Maryland during the month in which the crime was committed, Fisher maintains. These witnesses were credible, Fisher contends, because the jury must have accepted their testimony.

Fisher's second claim focuses on Garner's testimony. Fisher culled through the record, including the transcripts, and lists every arguable inconsistency he could find. First, Fisher points out that Garner wrote in his police report that he went to 513 Salem Avenue but then testified at trial that he went to 531 Salem Avenue. Second, Fisher claims that Garner wrote in his police report that Fisher had long hair but testified at trial that he had dreadlocks. Third, Fisher maintains that Garner identified Fisher at the scene but did not give the dispatcher Fisher's name when he fled. Finally, Fisher states that at the probable cause hearing, Garner testified that he did not attempt to question anyone else on Salem Avenue, but at trial, Garner testified that he went "down the block and worked his way back up."

In his "failure to follow proper protocol" claim, Fisher argues that the facts Garner knew when he applied for the Statement of Charges do not establish probable cause to believe that Fisher was the man in the LeSabre. Garner is clearly entitled to qualified immunity on this claim. The core facts that Garner knew when he applied for the Statement of Charges are more than sufficient to warrant a reasonable belief that Fisher was the man in the LeSabre and that the drugs found in the car were his.

Garner recognized Fisher from a previous encounter.  Fisher was a known drug dealer.  Fisher's name was on letter that Garner found in a black gym bag on the back seat.   A woman at the address the suspect gave Garner said that her daughter's boyfriend was nicknamed "Free," which is Fisher's nickname.

Moreover, a District Court Commissioner issued a Statement of Charges on the strength of the probable showing in Garner's Application.  At the preliminary hearing, Judge Long found that there was probable cause to believe that Fisher had committed the offense with which he was charged.  These findings are correct and insulate Garner from any claim that probable cause was lacking for Fisher's arrest and the charges laid against him.

Fisher's claim that Garner testified inconsistently and falsely also fails.  The alleged inconsistencies and lapses in Garner's testimony are either minor or unfounded.  The main points of Garner's written statements and his testimony about his encounter with the man in the LeSabre, his identification of Fisher, and his subsequent investigation are entirely consistent.  Fisher utterly fails to demonstrate that Garner testified untruthfully or recklessly on any point.  The fact that the jury accepted Fisher's alibi witnesses and acquitted Fisher is insufficient to strip Garner of qualified immunity.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will, by separate Order:

(i)      Grant Garner's Motion for Summary Judgment;

(ii)     Deny Fisher's Motion for Appointment of Counsel;

(iii)    Deny Fisher's Motion to Amend Complaint;

(iv)    Deny Fisher's Motion for Partial Summary Judgment;

(v)     ENTER judgment in favor of Defendant and against Plaintiff; and

(vi)     DIRECT the Clerk to CLOSE the case.


Dated this 18th day of September, 2007.


                                             _____/s/_____

                                             Benson Everett Legg
                                             Chief Judge